U.S. All right, we'll call our second and last case of the morning 23-10179 at Cone Envy U.S. Postal Service. Mr. Clary, whenever you're ready. Good morning and may it please the court. This case involves a construction of what I call the clawback provision 2680B, which applies to three types of events that the Postal Service may become engaged in and that is a loss, a miscarry, or a negligently transmitted mail. That provision claws back sovereign immunity that is otherwise waived by the Federal Tort Claims Act. The question before the court is whether the facts as alleged in the complaint fall within any of those three provisions and my position is that the facts as alleged do not fall within any of them. There was no loss here as described in Dolan, the Supreme Court case that is the leading case in this area. The Supreme Court defined loss in Dolan as damaged or misplaced mail. That did not happen here. We're not alleging damage. We're not alleging that the mail was misplaced. We're not alleging also that the mail was miscarried because miscarried is defined as sent to the wrong address. What we are alleging is that the mail was sent to no address. I thought it was returned. It was returned, I guess, right? It was. We're not sure whether all of it was returned, but some of it was returned. Was the mail returned, sent to the wrong address? No, I don't think so, Your Honor, because the tort is already complete at that point. The damage doesn't result from the fact that the mail is returned to sender. The damage here resulted from the fact that the mail was not transmitted to the proper addressee, my client, Ms. Conan, and her tenants. And that's, I think, a significant distinction. Is there common ground with what dictionary we look to? I mean, do you agree with the government we ought to look to, I think it's Webster's Second New International Dictionary, the 1942 edition specifically, to define the terms loss and miscarriage? Is there any dispute on that point? Yes, Your Honor. I think there is. I think I would go with the definition the Supreme Court supplied. I think that that's controlling, and those definitions are pretty clear. Miscarried means sent to the wrong address, and that didn't happen here. So does mail have to be delivered to the wrong address to be miscarried, or is it miscarried if it's simply not delivered to the right address? I think to be miscarried, it has to be delivered to the wrong address. To be, if it's wrongfully transmitted, if it's negligently transmitted, then it's covered by the third provision. But if it's intentionally not transmitted at all, it doesn't fall within any of these exceptions in 2680B. Can there be an intentional miscarriage? There, well, and I don't think this is a miscarriage. I think it's just a refusal to transmit. I don't think it was delivered anywhere. Under Lopez and the other reasoning, why isn't this an intentional tort because it was intended to be not delivered to the address over a period of two years? I agree with you completely, Your Honor. I think that's exactly what it is, an intentional tort. And I've only alleged intentional torts under Texas law in the complaint. Every single thing that I've alleged is an intentional tort under Texas law. So, I mean, those are the basic issues as far as the Federal Tort Claims Act claim goes. So it's neither a loss nor a miscarriage. It's neither loss nor a miscarriage, and it certainly wasn't negligently transmitted. It was simply a refusal to transmit that I allege was racially motivated over an extended period of time. You know, the post office here, they knew that the mail was not lost or damaged. They had it in their possession. They knew exactly where the mail was. So it can't be lost, and we're not alleging that it was damaged. What we're alleging is that they just simply refused to deliver mail. It was not sent to the wrong address, and as I've just discussed with Judge Willett, because it was not sent to the wrong address, it was not miscarried. And then finally, of course, it was not . . . all this was done intentionally, and so there was no negligent transmission involved. What we're alleging here is just a deliberate refusal to transmit. And there are a lot of . . . and I will say this. Obviously, there are a number of cases that really, I think, construe these quite broadly. For example, the First Circuit's decision in Lavoisier, where they talk about stolen mail being subject to 2680B so that sovereign immunity is preserved for that. I don't really understand why they needed to get to 2680B in order to reach the conclusion that sovereign immunity applied in a case like that, because stolen mail is outside the ordinary course of business. In almost . . . in every jurisdiction that I'm familiar with, an employee steals something. That's outside the ordinary course of business, and as a matter of law, under the Federal Tort Claims Act, that's just not a cognizable tort, period. So you don't really need to get to 2680B to even resolve that issue. So I think that was . . . I think Lavoisier's wrongly decided. I think they sort of extended 2680B when they didn't have to, to reach that result. You're referring to Lavoisier? Yes, sir. That, unfortunately, has become the . . . I think it's become the leading case in this area. It's certainly cited quite a bit, but I think it is wrongly decided. I do think the Eighth Circuit in Najjar . . . I hope I'm pronouncing that correctly. I think it had the right idea, and in Najjar, what they said was returning mail to sender is not lost mail, number one. Well, there's already a circuit split, right? Well, I'm not sure that . . . they really didn't take on Lavoisier. They didn't really mention that they were differing from Lavoisier. What they said was that there was a miscarriage in that case, and the reason there was a miscarriage in Najjar was because the mail was actually delivered there to a third party, and that third party marked it, deceased, and sent it back to the poor mom of this soldier who got a letter in the mail returned to her, marked deceased, thinking her son had passed away. Well, the problem there was, it had been delivered, it had been miscarried by the post office to a third party, so there was an actual miscarriage there. That's not our case. Our case, there's no miscarriage, period. It wasn't delivered to a third party. It was just a refusal to deliver the mail. Moving on, I've also alleged two claims, one under 42 U.S.C. 1981, and then a conspiracy claim under 1985, subsection 3, for violation or denial of equal protection rights. Ms. Conan is an African American woman, and for the reasons set out in my complaint in some detail, we believe that the actions here on the part of the postmaster and on the part of the particular mail carrier involved, that they were motivated by racial animus, and that he deliberately withheld mail from her and her tenants in order to harm her because she is black. That went on for a period, an extended period of years, and she consistently complained about it to the post office without them taking any action whatsoever. The major question in 1981C is going to be, that refers to actions that are involving non-governmental impairment and state impairment, and the government, I think, has rightly said that you can't have federal impairment there because that's not what the statute says, but if you're acting outside the ordinary course of business, my position is that that's non-governmental impairment. If you're not acting as a postman, and the postman, as I've cited in my complaint, has non-discretionary obligation to deliver the mail, that's what the postman has to do, and if he doesn't do that because he decides that he doesn't like the fact that a black woman owns this house and leases it to people, leases it to include white people, if that's the case, then that's non-governmental impairment. Under 1981C, I believe that she had a viable claim that the district court erred by dismissing. In terms of the 1985C, subsection 3 argument, what I'm saying there is that there were two conspirators involved, the postmaster and the postman who serviced this particular home, and they both knew and acted on an agreement to discriminate against Ms. Conan on the basis of her race. The district court dismissed that claim on the basis of this court's ruling in Mack v. Alexander that the 1985C does not apply to federal officials. Well, that may be true as far as it goes, and courts have rejected that uniformly except for this circuit. This circuit is an outlier on that, but if that's true, then clearly they were not acting in their capacity as federal officers when they were engaged in this discrimination. At the very least, there's a fact issue as to that question. Certainly shouldn't have been dismissed under 12B6. The district court also, I should say, dismissed it on the basis of the intracorporate conspiracy doctrine, which this circuit has recognized that it is applicable to 1985C cases, but in the case where the circuit recognized that, that's the Benningfield case. In that case, the court said that it may not be applicable in cases where the individuals were acting in their personal interests and not in the interest of the governmental agency to which they were assigned or employed. So those are the points that I've made. If the court has any questions for me, I'll be happy to answer them. Okay. Okay. Thank you, Your Honor. Thank you very much. We'll see you back on rebuttal. Okay. We'll now hear from the U.S. Postal Service. Mr. Admessen, did I pronounce that right? Yes, Your Honor. Good morning. May it please the court. In Dolan, the U.S. Supreme Court said that with the postal exception, Congress intended           Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. And is it true that these people can intentionally do it for non-governmental purposes over a period exceeding two years and come within that exception? Yes, Your Honor. And I'll just kind of break down my answer to your question. So the first part is intentional. I think that the text of this postal exception, which preserves sovereign immunity, very clearly shows that intentional torts, at least as it relates to the loss and miscarriage, are included. The word negligent doesn't appear in front of loss or miscarriage. And the statute actually starts with any claim. So we're starting with the universe of any claim, and there's no modifier regarding the state of mind for the words loss and miscarriage. As to the two years, that is true. There's no time qualifier on the sovereign immunity exception. If there's sovereign immunity, there is sovereign immunity. Now that's not to say that individuals in that position have absolutely no recourse. You mentioned the Lopez case earlier, Judge Wiener. The full title of the Lopez case, at least the D.C. Circuit one, is Lopez versus the U.S. Postal Service Regulatory Commission. So there is an administrative remedy, so a person isn't totally without a remedy. So specifically addressing the postal exception, there's two important terms here. And what Ms. Conin is alleging in this case falls under both of them. That's the loss and the miscarriage. Those are both non-delivery terms, and here we have a non-delivery of mail. So I'll start with loss. How can a loss be intentional? So this is something, it's the loss is the term. And the loss is defined as essentially a deprivation. And I think the plain meaning of the term loss can be something intentional or non-intentional. So it's just that of which anything is deprived. By plain meaning, you're looking at this Webster's Second New International or something else? Yes, Your Honor. I'm quoting the definition from a contemporaneous dictionary. That is the year that the statute was passed. And so that is, I think, the best way to determine what the plain and ordinary meaning was of the statutory term at the time that it was enacted. And I think it's really important too that the loss, there's no scientra qualifier in the plain and ordinary. Meaning you can, I think, an example would be lost and found, right? It may be lost to one person, but another person knows where it is. You would still describe it as something that is loss. And remember- If a businessman had opened her mail and taken money out of it, it wouldn't, it would still be under the exception? Yes, Your Honor. And I think that's what the court in the First Circuit in Lavoisier held. And in fact, specifically in CD of NYC Incorporated and Marine Insurance. Those are cases from the Second Circuit involving the theft of diamonds by a postal employee. So if there is a postal employee that's intentionally stealing the mail, that would be covered under the exception because it would be a loss. If there was money in the mail, that would be a loss of that money. And it would, that is exactly what those courts have held. Do they provide a definition of loss? And if they do, why would we rely on the Webster Dictionary definition as opposed to what the Supreme Court has given us as guidance? So Dolan doesn't provide a complete definition of the term loss. The court is making the general point that the terms loss and miscarriage are of the general character such that we shouldn't interpret negligent transmission as being much more broad. So I think that the line that you're referring to, Your Honor, is mail is lost if it's destroyed or misplaced and miscarried if it's delivered to the wrong address. That's not meant to be a definition that is kind of the total universe of conduct that could fall in those two terms. Typically when a Supreme Court purports to do that, they cite a dictionary definition and they talk about the plain meaning. The Supreme Court's point in describing the term loss and miscarriage as the character of those terms doesn't include the conduct in Dolan, which was slipping and falling on a package that was delivered. Moving, moving. Does, does, does the duration of the alleged wrongdoing matter at all in terms of how you interpret these words? For example, in, I guess we're pronouncing it Lavoisier, I don't know how to pronounce it. In that case, there was a single instance of a refusal to deliver these political campaign flyers. Here, what is alleged is a multi-year refusal, like steadfast, dogged refusal to deliver the mail. Based on race. Based on race. So does the duration of the alleged wrongdoing matter a single instance versus a multi-year race-based refusal? I don't think so, your honor. If you take a look at the word miscarriage, for example, the allegations here is that the, the, the post office is making a wrongful determination that the mail is undeliverable and should be sent back to sender based on concerns that the individuals living at the house don't actually live there or haven't provided proper proof of identity. So in that sense, even if it happens a lot, if there is mail that is repeatedly marked as undeliverable based on a dispute about whether it can be properly delivered, that, that is a miscarriage right there, full stop. And I don't think that there's anything in the text of this postal exception that, that should change whether it happens once or multiple times over a course of a year. And I think that that's actually the conduct in the Valdez case. That's a district of New Mexico case. There you had a, a postal employee that refused to deliver mail to certain individuals at a house. I believe it was only delivering to the plaintiff's mother. And the court there held that this is, this is exactly within what Dolan was talking about, which is the non-delivery of postal matter, and that results in harm. And so the court held, in Valdez, held that this is exactly within the postal exception, and that there were sovereign immunity that applied for, for pretty much the same conduct that we're talking about in this case. In fact, just, just take a step back. No court has held, there's been two courts that have said something in dicta, but no court has actually held that an intentional loss or an intentional miscarriage falls outside of the postal matter exception. Another case that I wanted to highlight is the, the Najbar case out of the Eighth Circuit. So my friend on the other side talked about the, the loss analysis, where it was a mother, she sent a, a letter to her son who's in the military. That letter was falsely returned to her, marked undeliverable. It actually had deceased marked on it, and that she filed a lawsuit saying that that caused her injuries. And the court held that there was no loss. She got the letter back, so it's not like there was money that was taken out of the letter. She got her letter back. There was no loss of it. But the court did hold that there was a miscarriage, that the wrongful determination that the letter was undeliverable is a miscarriage. And that's exactly the circumstances in this case. It's an allegation of a wrongful determination that something is undeliverable. And it was delivered, according to Ms. Conant, to the wrong address. But it's not an intentional wrongful interpretation. I, I would say in the Najbar case, yes, it was not intentional in, in the sense that the, I don't think there's an allegation that the postal service knew that the plaintiff's son was alive and, and stamped it deceased otherwise. So it's clearly distinguishable. I don't. And here it was delivered to the wrong address. Here there was no delivery at all. Is that, am I, am I correct about that? So the allegation in the complaint is that it was marked undeliverable and then returned is the, the quote from the complaint. And so I think returned is, is the allegation saying that it is going back to the sender now there's not an accounting in the complaint that for every single one it was returned to sender. But I think the the, the fair interpretation of the allegation that it is undeliverable in return means that it was returned to sender. So by your determination, which, which of the terms does this factual pattern fall into? Is it a loss, is it a miscarriage, is it a negligent transmission? Two of the three, all three, which, which ones are you hanging your head on? Loss and miscarriage. It is a loss because the plain meaning of the loss is some type of deprivation. And Ms. Conan is alleging that she was deprived of her mail. It's a miscarriage because the definition of a miscarriage is failure to properly carry or failure of something sent to arrive. Here, Ms. Conan is saying that her mail was improperly marked undeliverable and then returned. It was, in her view, sent to the wrong address. And it was not carried properly. She's saying that it was not properly processed and sent to her address. What do you do with the statement that an intentional misdelivery over an extended period of time is neither a loss nor a miscarriage, nor a negligent transmission of mail? So your Honor is quoting the Colbert case, right? Yep. So the, the Colbert, and I appreciate that you called it a statement because it's exactly that. It is dicta. The Colbert court, that's a district court, DDC. Well, I'm, I'm talking about our case. These particular facts, as alleged, don't constitute either a loss or a miscarriage or a negligent transmission. Yes, Your Honor. So, first the, the Colbert case, that is, that is dicta. The court dismissed that complaint on the grounds that the plaintiff had failed to exhaust. The second point is, is that is totally unsupported and it's not actually quoting the language of the statute. Mistransmission is not a term that appears in the statute. You have negligent transmission, but the government is not contending that this is a case of negligent transmission. So can you imagine that Congress or anybody would intentionally exempt this kind of alleged behavior? Certainly, Your Honor. In Dolan, I think the statistic was 660 million pieces of mail are delivered each day, and while the, the explanation for why there is this postal exception is, is a little bit sparse. The drafters of this exception said that we'd want to insulate the postal service from liability. It would be massive liability if every time the postal service didn't deliver mail properly, if all a plaintiff had to do was to have some, some type of allegation that it was intentional non-delivery of mail. And then the postal service would be on the hook for millions of dollars in liability based on just an, an allegation of intentionality. The Supreme Court is, is, I think, clear on this, is that the, from failings in the, quote, postal obligation of delivering mail. I think the Watkins case from the Northern District of Illinois does a great job of explaining why the purpose of the postal exemption includes, it makes sense that it includes both intentional and inadvertent torts. Under your definition, what, what happens in extreme circumstance if mail arrives at the post office, but never leaves. It's never returned to sender, it's never delivered. It sounds to me like you're saying under your definitions that as long, if, if what she is complaining of is a deprivation of receiving her mail, or that it was never delivered to her, then that's still not covered. Partially because it was returned to sender, I suppose. What happens if the mail just, it arrives at the post office, and it never leaves? Does it still fall under one of those exceptions? Yes, I would say that that is within the plain meaning of a loss, right? If it's just sitting at the post office, the person is being deprived of their mail. So there's a loss of mail. If it's intentional that it's not leaving the post office at all, it's still just considered a loss of mail. Yes, your honor, under the plain meaning of the word loss, which is essentially a deprivation. I, I would say it's also a miscarriage that plain meaning. If it was never carried at all, I mean, if it, if it's still at the post office, it was never carried to the, the sender or the supposed recipient. I, I, I take your point that, that the, the word of carry you might say that, well, if, if it's just. It's a miscarriage if it was never carried. Yes, your honor, I, I would say that there would still be a miscarriage. Number one, because the, the plain meaning of miscarriage is failure to properly carry and the failure of something sent to arrive. And so, if it's sitting at the post office and not arriving like you said, it would still fall under the. Intentional for a tortious means. I'm sorry, your honor? Even if it's intentional for a continuous tort. Yes, your honor. So, just going back to the text of this, this sovereign immunity exception. So it starts out with any claim. So right there we know that the start of this exception says, any claim at all. Whether intentional claim, a negligent claim. Any claim, that's how it starts. Then it says the loss or miscarriage. Now there's nothing in the plain meaning of loss or miscarriage that talks about intention. Well, that exempts the postal service, but does it exempt the postman from, who has done this intentional tort over a period of years? Under the FTCA, because the postman would be acting within the scope of employment. Likely in, in the scenario if it was just against the post, the post, the letter carrier specifically. Then, then yes it would because the FTCA would essentially substitute the United States in as the, as the party in the suit. Here though, the United States is the only one sued, so the issue of an individual letter carrier acting intentionally, if it's within the scope of employment. Can you, can you, as you're standing at the podium now, can you conjure any fact pattern that would take intentional wrongdoing outside the exception? Put these facts aside, is there any set of outlandish facts that would take this outside the exception? I could think of two, Your Honor. One would be intentionally driving a postal vehicle into someone causing personal injury. Now I'm talking about in the context of somebody not receiving their mail. In the context of someone not receiving your mail, that would be a non-delivery, and so under the Supreme Court's. No matter what the facts are. Even if postal workers, they didn't mark it undeliverable. They just, they, they destroyed it. Is there anything that the government thinks would not be exempt? Your Honor, I can't think of an example sitting here. Because the Supreme Court language is so broad, and because this is a, a broadly written statute. It says any claim and loss and miscarriage are broad terms. And the Supreme Court in Dolan says that claims arising from non-delivery are, fall within the statutory exception. There are, is sovereign immunity for non-delivery. And so, Your Honor's hypothetical, I, I think you're getting at a situation where there's non-delivery. And I would say, if there is non-delivery, according to what Dolan says, that non-delivery is an illustrative example of the exceptions operation. Well, is there a difference between exempting the postal service and exempting a tortious delivery man? I don't think so, Your Honor. I think it, it, the, the statute applies to any claim arising out of certain conduct. So it, I don't think. Claim against whom or what? Is it postal service? Or does it also include an intentional tortious delivery man? I, I don't, a claim against a letter carrier acting. Yeah, so a claim against a letter carrier, what would happen? And that's not this case. This, in this case, only the United States and the postal service was sued. The postal service was dismissed by the district court and the plaintiff doesn't challenge that. So that's not this case. But if there was a claim against a letter carrier for exactly what Your Honor is saying, intentional tortious conduct that would fall in the loss or miscarriage buckets, then what would happen is the United States would likely file a Westfall Act certification saying this was in the scope of employment and, and the United States would be substituted in and the sovereign immunity bar would apply. Now, there, there might be a hypothetical circumstance where the letter carrier is acting outside the scope of the letter carrier's employment. In that case, the United States could make the determination that we are not going to certify, and then it would just be a, a, a tort in state court. But if, if there's the delivery of mail involved, it's, it's hard for me to think of a fact pattern where that would happen. But theoretically, hypothetically, it, it is possible that there could be a suit just against a, a letter carrier in their personal capacity. This case would be a lot easier if the statute said non-delivery. But it doesn't say non-delivery. It says any claim arising out of a loss, miscarriage, or negligent transmission. Non-delivery, this case is a no-brainer. But you've got these three specific words, and the question is, do, do those words imply anything about mental states? And that's what I'm wrestling with. I think my answer would be twofold. The first is just the text. There's nothing in the plain meaning of the words loss and miscarriage that has anything about mental state. I think that the word loss and the word miscarriage get at essentially the conduct of non-delivery. The second point. I mean, others might say the, the straightforward kind of everyday meaning of loss and miscarriage, that unlike transmission, they don't need the negligent modifier in front of it, because those words generally involve accident in the first place. That's kind of the everyday, straight ahead understanding of those words. And, and I think that's why it's important to look at a contemporary dictionary to, to really see what did the drafters of the statute understand. These words to mean when they passed it. I think also, if, if you were going to impute some type of mental state, it's, it's really difficult to figure out what that might be. I, I take your Honor's point that if I lose something, right, typically the, the common example that comes to mind is it's inadvertent, right? Well, your friend has not just sued the postal service. He has sued on behalf of his client the, the two postmen that were involved personally, individually. Now, where do they get an exemption? Certainly are, and, and I apologize, I see my time has expired. May I have? Go ahead. You didn't answer the question. So, the, the letter carrier and the postmaster, they were only sued for the 1981 and 1985 claims. They were not named as defendants for the FTCA claim. And so it, it doesn't really make arguments about them and about sovereign immunity don't really relate to the FTCA because they just weren't sued under the FTCA. We'll, we'll, thank you very much and we'll see what your friend has to say about that. Thank you, Your Honor. Ms. Pollard, we're being generous today. Add another couple of minutes to the other side, just to even things out in the spirit of the season. Thank you, Your Honor. We'll see if you need it. One thing that I'd, I'd like to emphasize here is that when we're talking about the three categories that are exempted in 2680B, we're talking about the acts of the postal service. Not, they're not relating to the plaintiff, anything that the plaintiff did. These are claims brought about by the acts of the postal service. So, mail is lost. That loss is from the act of the postal service. The plaintiff may have suffered the injury. But it's lost, it's not loss, it's not her loss that they're talking about in 2680B. It's the loss of the mail. And the mail is lost or miscarried or negligently transmitted by the postal service. And if that happens and you can prove that it falls within one of those categories, then you have sovereign immunity. But you don't have sovereign immunity when the postal service just sits on the mail and refuses to do anything with it. They've got a non-discretionary obligation to deliver the mail. And they just don't do anything with it. They don't carry it anywhere. It's not miscarried. Let me ask you this. So, two nights ago, I go check our mail. And there's a Christmas card that my wife and I had mailed that had been returned to us. And so I texted the recipient of the Christmas card and I said, hey, have you all moved? Our Christmas card came back undelivered. She said, no, we're right here. We haven't moved in the last 30 years. So, it was, I guess, mistakenly not delivered. Would that be, is that miscarriage? Is that negligent transmission? I'm not suing, but that's certainly covered by the statute. Yes. But what type of, where does it fit? What category would that fit in? That would fit in negligent transmission because it was never, it would fit in, it wouldn't fit in miscarry because it was never delivered to the recipient. It would be a negligent transmission because they didn't do it right and it came back to you. And that's, that's what I think the analysis, the proper analysis. I'll tell my wife that tonight. I think a lot of the courts that have gone the way the government wants this court to go have done that because they're fearful that there'll be a landslide of litigation against the post office if things get too wild. And the exemption is not applied. But the exemption here is, is, is pretty broad. This case is a very narrow case. How many times does the post office get mail and just refuse to take it anywhere? And how many times does it do that because the plaintiff can prove it was racially motivated? That's a pretty limited set of facts in my, in my view. And the other point I would make is, a lot of times the post office is going to be protected because these employees are acting outside the scope of their employment. Now that's not something that is factually determinative at this stage of the litigation. There's a fact issue that needs to be, fact issues that need to be resolved before that determination can be made. But I'd say that there's a, there's an argument the government would, will most likely make if this case gets reversed and sent, and sent back down. That these two fellows were acting outside the scope of their employment, and therefore the Federal Tort Claims Act does not waive sovereign immunity for that. Which is, which is what really protects every federal agency from employees that go off half cocked like I think these folks did. But you have sued the post office and the individuals, right? Yeah, yes sir. Is it possible for this case to exempt the post office but not the individuals? I think that is possible because I've sued the individuals under 42 U.S.C. 1981 and 1985. I did not bring the tort claims against them because the Federal Tort Claims Act says that those tort claims, if they're in the ordinary course of the United States, and only the United States, so that's why they weren't named as tort feasors. So I can't sue them under the Federal Tort Claims Act, but I, I did sue them under the statutes that I think they're liable under. Okay, Mr. Clarion, we thank you. We thank your friends on the other side. The case is submitted and the court will stand adjourned. Thank you.